UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARENCE PHIPPEN            :    **CIVIL NO. 3:09-CV-00795**
                           :
         Plaintiff         :    (Judge Rambo)
                           :
    v.                     :    (Magistrate Judge Smyser)
                           :
CO FISKE, *et. al.,*       :
                           :
         Defendants        :


## **REPORT AND RECOMMENDATION**


I.  Background and Procedural History.


     The plaintiff commenced this action in the Court of
Common Pleas of Wayne County, Pennsylvania.  The action was
removed to this court.  On April 15, 2010, the plaintiff filed an
amended complaint.


     The amended complaint names as defendants: 1) CO Fiske, a
correctional officer at the State Correctional Institution at
Waymart (SCI-Waymart); 2) Ms. Loomis, a physician's assistant at
SCI-Waymart; 3) Donald Jones, a hearing examiner at SCI-Waymart;
4) Joe Nish, the Superintendent of SCI-Waymart; 5) the

Pennsylvania Department of Corrections; 6) the Program Review

Committee (PRC) at SCI-Waymart; 7) the Commonwealth of

Pennsylvania; 8) Rhonda Ellett, a unit manager at SCI-Waymart;

9) CO McHugh, a correctional officer at SCI-Waymart; and 10)

Jeffrey Beard[1], the Secretary of the Pennsylvania Department of

Corrections.

The plaintiff alleges the following facts in his amended

complaint.

The plaintiff has been doing legal work since his arrival

at SCI-Waymart in August of 2000.  In December of 2006, defendant

Fiske issued a fabricated misconduct charge against the plaintiff

after conducting a search of his cell.  That misconduct was

issued as a result of retaliation.

On numerous occasions defendant Fiske went out of his way

to come to the Restricted Housing Unit (RHU) and to stare and

_____

1. Beard is not listed as a defendant in the caption of the
amended complaint, but he is listed as a defendant in the body of
the amended complaint.

smile at the plaintiff through the window.  On one occasion
defendant Fiske said over the loud speaker "Merry Fucking
Christmas Mr. Phippen."  Defendant Fiske's behavior, which the
plaintiff characterizes as "evil," "despicable," "stalking" and
"harassing", was designed to terrorize the plaintiff.  It
happened so many times that it left the plaintiff shaken and
sensitive.  This behavior caused the plaintiff undue emotional
distress and serious psychological suffering especially since it
followed on the heels of a fabricated misconduct against him
issued by defendant Fiske.

       Defendant Fiske's behavior was triggered by the
plaintiff's legal work and was designed to deter the plaintiff
from doing legal work.  The plaintiff was treated differently
from other inmates because he was doing legal work in connection
with a 42 U.S.C. § 1983 case and a habeas corpus petition.  Staff
condoned defendant Fiske's behavior and, because "the heirarchy"
allowed the behavior to stand, that behavior constituted policy.
As soon as the plaintiff got out of isolation, the "stalking,"
"harassing" and "terrorizing" began all over again as defendant
Fiske would stop the plaintiff in the corridors with impunity to

solicit and harass him.  Defendant Fiske went to the plaintiff's
block to harass him.  Defendant Fiske directed derogatory remarks
to the plaintiff.

On April 25, 2007, the plaintiff submitted a grievance
regarding defendant Fiske's harassment.  The plaintiff appealed
the denial of that grievance.  The prison knew of defendant
Fiske's harassment.  In fact, the prison separated defendant
Fiske and the plaintiff for approximately one year.

On February 11, 2007, defendant McHugh came to the
plaintiff's cell and asked him if he smoked and the plaintiff
responded "no."  Defendant McHugh also asked the plaintiff if he
had bottom bunk status and the plaintiff responded "yes."
Several minutes later, defendant McHugh returned to the
plaintiff's cell and handed him a misconduct charging him with
lying to an employee and using abusive language toward an
employee.  Corrections Officer Cunningham supposedly had called
the medical department and a nurse told Cunningham that the
plaintiff did not have bottom bunk status.  The plaintiff showed
defendant McHugh a grievance signed by a unit manager returning

4

him to the bottom bunk but defendant McHugh ignored it. The plaintiff's cell mate witnessed this episode. Defendant McHugh intentionally falsified documents. Two years later, defendant Nish granted the plaintiff official bottom bunk status even though there had been no change in his health or medical stability.

The plaintiff was found guilty of the misconduct issued by defendant McHugh. In connection with the disciplinary hearing on that misconduct, defendant Jones, without a legitimate reason, refused to allow the plaintiff to call witnesses and also disallowed the plaintiff's evidence. At the disciplinary hearing, the plaintiff informed defendant Jones that he had filed a civil rights action against him but defendant Jones refused to recuse himself. Defendant Jones sentenced the plaintiff to 30 days in isolation in the RHU. The plaintiff was placed in the RHU in retaliation for his legal work. The plaintiff appealed defendant Jones' disciplinary decision but the Warden and the PRC affirmed that decision on appeal.

The plaintiff has been issued misconducts on numerous occasions. The plaintiff was never allowed to present any witnesses or any evidence.

The plaintiff was subjected to what he terms an "atypical and significant hardship" because he was placed in the RHU when he had pending § 1983 and habeas corpus cases and he was allowed to go the RHU mini law library only a few times. The conditions in the RHU are worse than the conditions in the regular population because unlike in the regular population the library in the RHU is the temperature of a meat cooler, pens in the RHU library are difficult to use since they are frozen, the books in the RHU library are incomplete and ancient, in order to use the computer in the RHU library an inmate must stand and must put his hands through a hole in plexiglass in order to maneuver the computer mouse and inmates in the RHU must wait weeks for copies and for ribbons and correction tape for the typewriters.

In July of 2006, the plaintiff had a mini stroke. His blood pressure was 180/100 and he had to be taken to the

dispensary in a wheelchair after losing all feeling in his left side.  At the dispensary, the plaintiff was given two aspirin and after a couple of hours his blood pressure had returned to a level acceptable to the medical staff.

The plaintiff became dizzy as a result of the fabricated misconduct that was issued to him in February of 2007 and as a result of defendant Fiske's harassment.  On February 11, 2007, the plaintiff submitted a sick call request because he was experiencing dizziness and itching.  He put the sick call request on his isolation door and someone picked it up.

Later on February 11, 2007, defendant Loomis visited the plaintiff at his cell and the plaintiff told her that he was feeling dizzy when lying down and getting up.  He also told defendant Loomis about a rash on his legs that he was scratching incessantly.  He showed her his legs which were scarred and bleeding.  The plaintiff asked for an aspirin but defendant Loomis ignored him.  Defendant Loomis took the plaintiff's blood pressure which was 180/80.  Defendant Loomis prescribed more

blood pressure checks and said that she would get some salve for what she called contact dermatitis.

On the next day, February 12, 2007, medics came to the plaintiff's cell and took his blood pressure which was 148/92. They did not give him an aspirin or any rash medication. When the plaintiff asked about the rash medication, the medics told him to submit a sick call request. He told them that he had and they told him to submit another. The plaintiff asked for an aspirin but the medics ignored him. Later that afternoon, the plaintiff's blood pressure was checked and was 170/106. The plaintiff was not given an aspirin or rash medication.

On February 13, 2007, the plaintiff wrote another sick call request because no medication was supplied to him. The plaintiff asked the medics where his medication was and they told him to put in a sick call request. This went on for days and the plaintiff was not given any aspirin or rash medication. The plaintiff yelled at the medics for some relief and his blood pressure was being aggravated. On February 19, 2007, the plaintiff submitted his sixth sick call request.

When an inmate puts a sick call request on the window of his isolation door, one of the guards picks it up and supposedly deposits it into the appropriate box at the end of the tier. Every morning the medical department supposedly picks up the sick call requests and addresses them.

The plaintiff's requests for medical help were ignored. The medical staff and defendant Loomis denied the plaintiff medication during the week that his blood pressure was being monitored. The plaintiff communicated his serious medical need to defendant Loomis and others.

On February 20, 2007, defendant Loomis ran past the plaintiff's cell. The plaintiff called to her yelling "Ms Loomis - Ms Loomis - Ms Loomis." Although she was only a few feet away, she ignored him. Defendant Loomis knew that the plaintiff was suffering - she could hear it in his voice. The plaintiff filed a grievance. The plaintiff appealed the denial of that grievance to defendant Nish and then to the Central Office. His appeals were unsuccessful.

On February 23, 2007, the plaintiff yelled at defendant Nish through his cell window. The plaintiff told defendant Nish his story and showed him his bleeding legs. The plaintiff accused the medical department of torture and attempted homicide. Defendant Nish left immediately. Within twenty minutes thereafter, defendant Loomis came to the plaintiff's cell. Defendant Loomis yelled at the plaintiff that she had not received any of his sick call requests.

The plaintiff alleges that defendant Loomis had received his sick call requests because the first thing she told him was that she had not gotten the sick call requests. He alleges that defendant Loomis yelled that she did not get his six sick call requests. He queries how she would have known that there were six sick call requests if she had not gotten them. The plaintiff alleges that he can not prove whether defendant Loomis got his sick call requests or whether the guards sabotaged them. He alleges that it doesn't matter whether or not defendant Loomis got his sick call requests because the requests were just

reminders that she was depriving him of the medication that she promised him on February 11, 2007.

On February 24, 2007, the plaintiff was given pills (a baby aspirin and a water pill) for his dizziness and ointment for his rash which, he contends was a MRSA (methicillin-resistant staphylococcus aureus) infection. He had caught the MRSA infection between August and November of 2006 and he had received medical attention for it. Defendant Loomis had treated the plaintiff for his itching/rash in 2006 when she and the plaintiff debated what the disease was. In early 2007, the DOC put out a bulletin on MRSA and how to prevent it.

The plaintiff alleges that the stress of being in isolation caused his blood pressure to be elevated, aggravated his MRSA infection and caused him emotional distress.

The plaintiff's medical file documented his history of a stroke and MRSA infection. Defendant Loomis had possession of the plaintiff's medical file but failed to read the file. Had

defendant Loomis read the plaintiff's medical file, she would have discovered his history.

The plaintiff alleges that the defendants conspired against him and that the defendants took the actions that they did in retaliation for his legal work. He alleges that as a result of the defendants' actions he lost his § 1983 case, his habeas corpus appeal and his parole.

The amended complaint contains 63 counts. Counts 1 and 2 are claims against defendants Fiske and Jones for what plaintiff terms abuse of discretion[2]. Count 3 is a claim against defendant Fiske for "Stalking and Harassing."[3] Counts 4 through 7 are equal protection claims against defendants Fiske, Jones, the PRC and Nish. Counts 8 through 11 are retaliation claims against defendants Fiske, McHugh, Jones and the PRC. Counts 12 through 18 are claims for culpable conduct against defendants Fiske,

_____

[2]. In connection with these counts, the plaintiff cites a provision – 71 P.S. §741.807 – of Pennsylvania's Civil Service Act. 71 P.S. §741.807 provides that "[n]o regular employe in the classified service shall be removed except for just cause."

[3]. In connection with this count, the plaintiff cites to 18 Pa.C.S.A. § 2709, a provision of Pennsylvania's Crimes Code.

Jones, Loomis, the PRC, Nish and the DOC.[4]  Counts 19 through 22

are claims against defendants Fiske, Jones, Loomis and the DOC

for intentional infliction of emotional distress.  Counts 23

through 26 are claims against defendants Jones, the PRC and Nish

for false statements.[5]  Counts 27 through 32 are claims against

defendants Fiske, Jones, Loomis, the PRC and the DOC for what

plaintiff terms "Breach."  Counts 33 through 37 are due process

claims against defendants Jones, the PRC and the DOC.  Counts 38

through 45 are fraud claims against defendants Jones, Loomis,

Nish and the DOC.  Counts 46 through 48 are Eighth Amendment

claims against defendants Loomis and Nish.  Counts 49 through 53

are claims labeled "Obstruction" against defendants Fiske, the

DOC, Jones and Ellett.[6]  Counts 54 through 59 are state law

conspiracy claims against defendants Fiske, Jones, Loomis, the

PRC, Nish and the DOC.  Counts 60 and 61 are Eighth Amendment

---

[4]. In connection with these counts, the plaintiff cites 18
Pa.C.S.A. § 303, a general provision of Pennsylvania's Crimes
Code.

[5]. In connection with these counts, the plaintiff cites 18
Pa.C.S.A. § 3218, which is the criminal penalties provision of
Pennsylvania's Abortion Control Act.

[6]. In connection with these counts, the plaintiff cites 18
Pa.C.S.A. § 5101, a provision of Pennsylvania's Crimes Code.

claims against defendants Fiske and Loomis.[7]  Counts 62 and 63 are

claims against defendants the DOC and Beard labeled "Sham."


II.  Defendant Loomis' Motion to Dismiss.


On May 4, 2010, defendant Loomis filed a motion to

dismiss the amended complaint and, on May 24, 2010, she filed a

brief in support of that motion.  On June 8, 2010, the plaintiff

filed a brief in opposition to the motion to dismiss.  On June

30, 2010, defendant Loomis filed a reply brief.


A. Motion to Dismiss and Pleading Standards.


A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)

challenges the legal sufficiency of the plaintiff's complaint.

In deciding a motion to dismiss the complaint, we must accept all

well-pleaded factual allegations as true, "construe the complaint

in the light most favorable to the plaintiff, and determine

whether, under any reasonable reading of the complaint, the

---

[7]. The plaintiff labels these claims as "Torture" claims but he
cites the Eighth Amendment.

14

plaintiff may be entitled to relief." *McTernan v. City of York,*
564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of
Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a
pleading must contain a 'short and plain statement of the claim
showing that the pleader is entitled to relief.'" *Ashcroft v.
Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by
Rule 8(a)(2) need only give the defendant fair notice of what the
plaintiff's claim is and of the grounds upon which it rests.
*Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual
allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 555 (2007).  However, more is required than labels,
conclusions and a formulaic recitation of the elements of a cause
of action. *Id.*  "In other words, a complaint must do more than
allege the plaintiff's entitlement to relief." *Fowler v. UPMC
Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to
"show" such an entitlement with its facts." *Id.*  "While legal
conclusions can provide the framework of a complaint, they must
be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct.
at 1950.  "When there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

B. Discussion.

The allegations regarding defendant Loomis in the amended complaint are for the most part materially the same as the allegations in the original complaint.  The court previously determined that the original complaint failed to state a claim upon which relief can be granted against defendant Loomis.  We reach the same conclusion with respect to the amended complaint. We address below each of the plaintiff's claims against defendant Loomis in the amended complaint.

1. Eighth Amendment Claims.

The amended complaint attempts to state Eighth Amendment claims against defendant Loomis.  The plaintiff claims that defendant Loomis violated the Eighth Amendment by failing to provide him with aspirin for his dizziness and high blood pressure and medication for his rash for thirteen days after her February 11, 2007 visit with him.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order for the plaintiff to state a viable Eighth Amendment medical care claim he must allege that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference may be found in a variety of circumstances including

where a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment based on a non-medical reason, denies prescribed or recommended treatment or persists in a particular course of treatment "'in the face of resultant pain and risk of permanent injury.'" *Rouse*, *supra,* 182 F.3d at 197 (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Id.* "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle, supra,* 429 U.S. at 106. "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of

inmates. Courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."); *White*, *supra,* 897 F.2d at 110 (mere disagreement over proper treatment does not state a claim upon which relief can be granted).

Defendant Loomis contends that the plaintiff has not alleged facts that can reasonably support an inference that she knew that her conduct presented a substantial risk of harm to the plaintiff. We agree.

Although the plaintiff alleges that he had a mini stroke in 2006, he does not allege that defendant Loomis was aware of that fact. He alleges that that fact was in his medical file which defendant Loomis had access to and that she should have read his file. He does not, however, allege facts from which a reasonable inference can be drawn that defendant Loomis did actually know of the plaintiff's history of stroke. Additionally, the plaintiff alleges that defendant Loomis did prescribe blood pressure checks for his dizziness and that those checks were performed by other medical personnel. The facts alleged by the plaintiff do not lead to a plausible inference that defendant Loomis was deliberately indifferent with regard to the plaintiff's dizziness.

Although the plaintiff alleges that he had a MRSA infection, that he had been treated for the MRSA infection and that defendant Loomis had previously treated him for itching/rash in 2006, he does not allege facts from which a reasonable inference can be drawn that defendant Loomis was aware that he currently had a MRSA infection. Rather, the plaintiff alleges

that defendant Loomis indicated that she believed that his rash was contact dermatitis.

The plaintiff alleges that he put in six sick call slips after seeing defendant Loomis but that defendant Loomis did not return to see him until after he talked to defendant Nish. However, the plaintiff has not alleged facts from which it can reasonably be inferred that defendant Loomis received those sick calls slips. Further, although the plaintiff alleges that on one occasion defendant Loomis ignored him when called to her as she passed by his cell, he alleges that on that occasion he was merely calling her name. He does not allege that he called out to her anything which would indicate that his health was at substantial risk. It is not reasonable to conclude that a physician assistant who ignores a general call from a person whom she thinks merely has contact dermatitis is indifferent to a serious medical need of the person.

Again, the plaintiff alleges that defendant Loomis should have read his medical file. However, deliberate indifference requires that the defendant actually be aware that a substantial

risk of serious harm to the prisoner exists.  It is not enough that the defendant should have been aware of such a risk.  The facts alleged by the plaintiff do not lead to a plausible inference that defendant Loomis was deliberately indifferent with regard to the plaintiff's rash.

Since the plaintiff has not alleged facts from which a plausible inference can be drawn that defendant Loomis was deliberately indifferent to his serious medical needs, the complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Loomis.

The plaintiff labeled some of his Eighth Amendment claims as "torture" claims.  The analysis under the Eighth Amendment is that set forth above and that analysis does not depend upon the label placed on the claim by the plaintiff.  To the extent that the plaintiff intended to plead a claim in addition to an Eighth Amendment claim in his counts labeled "Torture," the amended complaint does not provide fair notice of the nature of any such claim.

2. Counts Fourteen and Fifteen.

Defendant Loomis contends that Counts 14 and 15 of the amended complaint fail to state a claim upon which relief can be granted. We agree.

Counts 14 and 15 are under a heading in the amended complaint that reads "Culpable." Doc. 55 at 61-62. Immediately under that heading, the plaintiff alleges:

> The plaintiff asserts as to the grounds upon which this action of Culpability is based on: Title 18 Pa.C.S.A. § 303 - liability is based on conduct which includes a Voluntary act or the omission to perform an act of which he is physically capable. Omission cannot be used unless the omission is expressly made and the duty to perform was imposed by the law.

*Id.* at 61. Then in Count 14 the plaintiff alleges that defendant Loomis is culpable because she "voluntarily omitted" the rash medication that she was capable of administering and was within her duty to provide. *Id.* In Count 15 the plaintiff alleges that defendant Loomis was culpable because she "voluntarily omitted" medication for his dizziness for a period of thirteen days. *Id.* at 62.

24

18 Pa.C.S.A. § 303, cited by the plaintiff, is a general provision of Pennsylvania's Crimes Code.  That provision does not provide a civil cause of action and is not applicable in a civil action.  Accordingly, those counts fail to state a clam upon which relief may be granted.

### 3.   Intentional Infliction of Emotional Distress.

Count 21 of the amended complaint is a claim against defendant Loomis for intentional infliction of emotional distress.  Defendant Loomis contends that this count fails to state a claim upon which relief can be granted.  We agree.

The Restatement (Second) of Torts § 46(1) defines the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  The Pennsylvania Supreme Court has not expressly recognized a cause

of action for intentional infliction of emotional distress and has not formally adopted § 46 of the Restatement. However, without deciding whether a cause of action for intentional infliction of emotional distress is recognized in Pennsylvania, the Pennsylvania Supreme Court has cited the Restatement as setting forth the minimum elements necessary to sustain such a cause of action. *Taylor v. Albert Einstein Medical Center,* 754 A.2d 650, 652 (Pa. 2000).

To be actionable as intentional infliction of emotional distress the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)(quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa.Super.Ct. 1987)). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Id.* (citing for example *Papieves v. Lawrence,* 263 A.2d 118 (Pa. 1970)(defendant, after striking and killing plaintiff's son with automobile and failing to notify authorities or seek

medical assistance, buried body in a field where it was discovered two months later and returned to parents); *Banyas v. Lower Bucks Hosp.,* 437 A.2d 1236 (Pa.Super.Ct. 1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to the plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979)(defendant's team physician released to press information that the plaintiff was suffering from a fatal disease when physician knew such information was false)). Recovery for the tort of intentional infliction of emotional distress is reserved for "only the most clearly desperate and ultra extreme conduct." *Id.* at 754.

We conclude that the conduct of defendant Loomis, as alleged by the plaintiff, was not so outrageous in character and so extreme in degree as to be actionable as a claim for intentional infliction of emotional distress. Accordingly, the amended complaint fails to state an intentional infliction of emotional distress claim against defendant Loomis upon which relief can be granted.

4. Count Twenty-Nine.

Defendant Loomis contends that Count 29 of the amended complaint fails to state a claim upon which relief can be granted against her. We agree.

Count 29 is under a heading in the complaint that reads "Breach." Doc. 55 at 65. Immediately under that heading, the plaintiff alleges that according to Black's Law Dictionary "a breach is an infraction of the law or obligation [or] duty." *Id.* In Count 29, the plaintiff alleges that defendant Loomis "breached her duty/obligation when she continually ignored the medication for the rash and the medication for dizziness. She ran past my cell as I called to her for help for 13 days." *Id.* These allegations do not provide fair notice to defendant Loomis of what duty or obligation she is alleged to have breached.[8]

_____

[8]. As indicated above, prison officials have a duty to provide basic medical care to prisoners under the Eighth Amendment. We have already addressed the plaintiff's Eighth Amendment claims and have concluded that the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Loomis.

Accordingly, Count 29 fails to state a claim upon which relief can be granted.

     5.  Fraud.

Defendant Loomis contends that Count 39 of the amended complaint fails to state a claim upon which relief can be granted against her. We agree.

Count 39 is a state law claim of fraud against defendant Loomis. The plaintiff alleges that defendant Loomis willfully ignored his rash medication, denied him medication for dizziness, ran past his cell as he called to her and denied that she received his sick call requests. *Doc.* 55 at 69. He alleges that all of this was "deception and concealment." *Id.*

In order to establish fraud under Pennsylvania law, a plaintiff must establish 1) a misrepresentation of material fact; 2) scienter, 3) intention by the defendant to induce action; 4) justifiable reliance on the misrepresentation, and 5) and damage as a proximate result. *Colaizzi v. Beck*, 895 A.2d 36, 39

(Pa.Super.Ct. 2006).  Pursuant to Fed.R.Civ.P. 9(b), fraud must
be pleaded with particularity.

The plaintiff's allegations do not state a fraud claim
upon which relief may be granted against defendant Loomis.

6. Conspiracy.

Defendant Loomis contends that Count 56 of the amended
complaint fails to state a claim against her upon which relief
may be granted.  We agree.

Count 56 is a claim for civil conspiracy under
Pennsylvania law.  The plaintiff alleges that defendant Loomis:
"facilitated this Conspiracy while acting in concert when she
omitted the rash medication for 13 days and omitted the
medication for dizzyness [sic] for over a week after the b/p
checks were complete.  She confirmed Conspiracy when she scurried
past my cell as I called to her and then denied that she ever got
my 6 sick call request[s] that were merely reminders." *Doc. 55* at
74.

In order to establish a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must establish: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *Kline v. Security Guards, Inc.,* 386 F.3d 246, 262 (3d Cir. 2004).

The plaintiff's conclusory allegations that defendant Loomis "facilitated" and "confirmed" the conspiracy by her acts do not state a conspiracy claim against defendant Loomis upon which relief can be granted.

C.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend."

*Id.*  In the instant case, the plaintiff was granted leave to file

an amended complaint after defendant Loomis' motion to dismiss

the original complaint was granted.  Rather, than correcting the

deficiencies noted in connection with the original complaint, the

plaintiff filed an amended complaint containing those same

deficiencies.  Granting the plaintiff further leave to amend

would be futile.


D. Summary.


In summary, it will be recommended that defendant Loomis'

motion to dismiss the amended complaint be granted and that all

claims (Counts 14, 15, 21, 29, 39, 46, 47, 56 and 61 of the

amended complaint) against defendant Loomis be dismissed.


III.  Plaintiff's Motion for a Preliminary Injunction.


On June 15, 2010, the plaintiff filed a motion for a

preliminary injunction and a brief in support of that motion.  On

June 21, 2010, defendant Loomis filed a brief in opposition to

the plaintiff's motion, and, on July 2, 2010, the corrections defendants filed a brief in opposition to the plaintiff's motion.

"A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010).

The plaintiff is seeking a preliminary injunction enjoining the operation of DC-ADM 801, DC-ADM 804 and 37 Pa.Code § 93.10.

As to DC-ADM 801, the plaintiff alleges in the amended complaint that the policy provides that witnesses "may" be allowed to be called at prison disciplinary hearings whereas in *Wolff v. McDonnell*, 418 U.S. 539 (1974) the United States Supreme Court held the witnesses "should" be allowed to be called at

prison disciplinary hearings.   The plaintiff claims that DC-ADM

801 is in conflict with *Wolff.*


            The relevant provisions of DC-ADM 801 regarding the

calling of witnesses are as follows:

> 1. The Hearing Examiner may approve the presence
> of a staff member or witness, only if the staff
> member or witness has knowledge of the incident,
> is present on facility grounds, and only if the
> testimony is needed to establish the guilt or
> innocence of the inmate.

> 2. Up to three relevant witnesses, who have been
> properly requested may be permitted. One of the
> three witnesses may be the staff member who
> witnessed the misconduct violation, or the
> charging staff member.

> a. The inmate shall state on the **DC-141, Part
> II(A),** *Inmate Request for Representation &
> Witnesses (refer to Section 1, Attachment 1-C)*
> why the witness is relevant to the hearing. The
> witness shall be a staff member, official
> volunteer, **contract service provider,** or an
> inmate, unless the hearing is conducted at a CCC,
> where civilian witnesses may be permitted. If the
> Hearing Examiner denies the requested witnesses,
> the reasons for denying such a request shall be
> stated in writing.

> b. If the inmate properly requests a witness who
> is not available at the time of the hearing, the
> inmate may elect to either waive the seven
> working days requirement or have the witness
> execute a written statement under oath which
> shall be presented in lieu of live testimony

(subject to the penalties for un-sworn
falsification to authorities). If the inmate
elects to have the witness present, the hearing
shall be rescheduled at the earliest time after
the witness is available.

c. If an inmate witness or assistant becomes
disruptive at the hearing or refuses to follow
the instructions given by the Hearing Examiner,
he/she shall be removed and the hearing conducted
without the witness or assistant being present.

DC-ADM 801, Section 3.D (emphasis in original)(footnotes

omitted)(available from the Department of Corrections' website

[www.cor.state.pa.us](www.cor.state.pa.us)).


In *Wolff, supra,* the Supreme Court stated the following

regarding the calling of witnesses at prison disciplinary

hearings:

We are also of the opinion that the inmate facing
disciplinary proceedings should be allowed to
call witnesses and present documentary evidence
in his defense when permitting him to do so will
not be unduly hazardous to institutional safety
or correctional goals. Ordinarily, the right to
present evidence is basic to a fair hearing; but
the unrestricted right to call witnesses from the
prison population carries obvious potential for
disruption and for interference with the swift
punishment that in individual cases may be
essential to carrying out the correctional
program of the institution. We should not be too
ready to exercise oversight and put aside the
judgment of prison administrators. It may be that

an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

418 U.S. at 566.

A comparison of DC-ADM 801 and *Wolff* indicates that, contrary to the plaintiff's suggestion, DC-ADM does not contain a standard for calling witnesses that violates *Wolff.*

The plaintiff also claims that 37 Pa.Code § 93.10 is silent as to witnesses at disciplinary hearings.  However, 37 Pa.Code § 93.10 provides that the Department of Corrections shall maintain and disseminate to the inmate population written procedures which conform to the established principles of law concerning *inter alia* the "[o]pportunity for the inmate to tell his story and to present relevant evidence."  As set forth above, the Department of Corrections has done so through DC-ADM 801.

The plaintiff also claims that DC-ADM 801 is silent as to the requirement that the hearing examiner be impartial.  However, DC-ADM 801 defines a hearing examiner as "[a]n employee of the Department's Office of Chief Counsel who conducts inmate Misconduct Hearings, Assessment Hearings, Agency Adjudication Hearings, and serves as an impartial party in the inmate disciplinary process."  Moreover, in the context of a prison disciplinary proceeding, the requirement of an impartial tribunal

"prohibits only those officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body." *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974). The plaintiff has not alleged or established that under DC-ADM 801 hearing examiners do not meet this definition of impartiality.

The plaintiff also claims that neither DC-ADM 801 nor 37 Pa.Code § 93.10 addresses the requirement of a liberty interest. A due process claim requires a two part analysis. First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.* That the due process protections set forth in *Wolff* are implicated only when a protected interest in liberty (or life or property) is implicated does not mean that the state may not provide process beyond that which is required by *Wolff* and Due Process Clause. Thus, the fact that DC-ADM 801 and 37 Pa.Code § 93.10 do not address the

requirement of a liberty interest is not a violation of the plaintiff's rights.

The plaintiff claims in the amended complaint that DC-ADM 804, the administrative directive regarding the prison grievance process, is a "sham" because there is no requirement in the directive that the claims raised actually be addressed. However, "[i]t is well-established that inmates do not have a constitutionally protected right to a prison grievance system." *Mitchell v. Dodrill,* 696 F.Supp.2d 454, (M.D.Pa. 2010)(Rambo, J.). Accordingly, the amended complaint fails to state a claim upon which relief can be granted based on DC-ADM 804.

The amended complaint fails to state a claim upon which relief can be granted with respect to his challenges to DC-ADM 801, 37 Pa. Code 93.10, and DC-ADM 804. Accordingly, the plaintiff has failed to show that he has a reasonable probability of success on the merits. Further, the plaintiff has failed to establish that he will be irreparably injured if a preliminary injunction is not granted. Therefore, it will be recommended

that the plaintiff's motion for a preliminary injunction be
denied.


IV.  Other Defendants and Claims.

     None of the defendants other than defendant Loomis has
responded to the amended complaint.  We review the amended
complaint pursuant to 28 U.S.C. § 1915(e)(2) which provides:

          Notwithstanding any filing fee, or any
     portion thereof, that may have been paid, the
     court shall dismiss the case at any time if the
     court determines that -
     (A) the allegation of poverty is untrue; or
     (B) the action or appeal -
          (i) is frivolous or malicious
          (ii) fails to state a claim upon which
     relief may be granted; or
          (iii) seeks monetary relief against a
     defendant who is immune from such relief.


     A. The Commonwealth of Pennsylvania, the DOC and Beard.

     The claims in the amended complaint against the
Commonwealth of Pennsylvania and the DOC are barred by the
Eleventh Amendment.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)(quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal system and that it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).

In the absence of consent, a suit in federal court against the state or one of its agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)(per

curiam).  However, a state may waive its Eleventh Amendment

immunity by consenting to suit and Congress may abrogate States'

Eleventh Amendment immunity when it unequivocally intends to do

so and it acts pursuant to a valid grant of constitutional

authority. *College Savings Bank v. Florida Prepaid Postsecondary*

*Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).

The Commonwealth of Pennsylvania has not waived its

Eleventh Amendment immunity, *see* 42 P.C.S.A. § 8521(b), and 42

U.S.C. § 1983 does not override a state's Eleventh Amendment

immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).  The Pennsylvania

Department of Corrections is a state agency. *See* 71 P.S. § 61.

Accordingly, the plaintiff's claims against the Commonwealth of

Pennsylvania and the DOC are barred by the Eleventh Amendment.

The plaintiff has sued defendant Beard in his official

capacity.

Claims against state officials in their official

capacities for damages are treated as suits against the state and

are barred by the Eleventh Amendment.  *See Hafer v. Melo*, 502

42

U.S. 21, 25 (1991); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

The plaintiff's claim for monetary damages against defendant Beard in his official capacity is barred by the Eleventh Amendment. Further, the only counts in the amended complaint in which defendant Beard is named as a defendant are Counts 62 and 63. Counts 62 and 63 of the amended complaint are claims that DC-ADM 801 and DC-ADM 804 are unlawful. As discussed above in connection with the plaintiff's motion for a preliminary injunction, the amended complaint fails to state a claim upon which relief may be granted based on the plaintiff's challenges to DC-ADM 801 and DC-ADM 804. Accordingly, the amended complaint fails to state a claim upon which relief may be granted against defendant Beard.

It will be recommended that Counts 18, 22, 31, 32, 36, 37, 43, 44, 45, 50, 59, 62 and 63 of the amended complaint, which are the claims against defendants Commonwealth of Pennsylvania, the DOC and Beard, be dismissed.

B. Counts 1 and 2.


Counts 1 and 2 of the amended complaint are claims against defendants Fiske and Jones for what the plaintiff terms abuse of discretion.  In connection with these counts, the plaintiff cites a provision - 71 P.S. § 741.807 - of Pennsylvania's Civil Service Act. 71 P.S. § 741.807 provides that "[n]o regular employe in the classified service shall be removed except for just cause."  The plaintiff does not have standing to sue to enforce 71 P.S. § 741.807.  Accordingly, Counts 1 and 2 of the amended complaint fail to state a claim upon which relief may be granted.


C. Count 3.


Count 3 of the amended complaint is a claim against defendant Fiske for "Stalking and Harassing."  In connection with this count, the plaintiff cites to 18 Pa.C.S.A. § 2709, a provision of Pennsylvania's Crimes Code.  Criminal statutes can not be enforced in a civil action. *See generally, Cappogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir.

2009)(stating that "individual citizens do not have a constitutional right to the prosecution of alleged criminals"). Accordingly, Count 3 of the amended complaint fails to state a claim upon which relief may be granted.

### D. Counts 12, 13, 16 and 17.

Counts 12, 13, 16 and 17 of the amended complaints are claims for culpable conduct against defendants Fiske, Jones, the PRC and Nish. In connection with these counts, the plaintiff cites 18 Pa.C.S.A. § 303, a general provision of Pennsylvania's Crimes Code. As stated above, criminal statutes can not be enforced in a civil action. Accordingly, Counts 12, 13, 16 and 17 of the amended complaint fail to state a claim upon which relief may be granted.

### E. Counts 19 and 20.

Counts 19 and 20 are claims against defendants Fiske and Jones for intentional infliction of emotional distress.

As discussed above in connection with the intentional infliction of emotional distress claim against defendant Loomis, to be actionable as intentional infliction of emotional distress the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)(quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa.Super.Ct. 1987)).

The alleged conduct of defendant Fiske (issuing a fabricated retaliatory misconduct, staring and smiling at the plaintiff, saying "Merry Fucking Christmas Mr. Phippen" over the loud speaker, stopping the plaintiff in the corridors and going to his cellblock to solicit and harass him and directing derogatory remarks to the plaintiff) and the alleged conduct of defendant Jones (refusing to allow the plaintiff to call witnesses, disallowing the plaintiff's evidence, refusing to recuse himself and sanctioning the plaintiff to the RHU in connection with disciplinary proceedings) is not so outrageous in character and so extreme in degree as to be actionable as a claim

for intentional infliction of emotional distress.  Accordingly,
Counts 19 and 20 of the amended complaint fail to state claims
upon which relief may be granted.

F. Counts 23 through 26.

Counts 23 through 26 are claims against defendants Jones,
the PRC and Nish for false statements. In connection with these
counts, the plaintiff cites 18 Pa.C.S.A. § 3218, which is the
criminal penalties provision of Pennsylvania's Abortion Control
Act.  As stated above, criminal statutes can not be enforced in a
civil action.  Moreover, the plaintiff has not alleged any facts
which even remotely relate to the subject of that statute.
Accordingly, Counts 23 through 26 of the amended complaint fail
to state claims upon which relief may be granted.

G. Counts 27, 28 and 30.

Counts 27, 28 and 30 of the amended complaint are claims
against defendants Fiske, Jones and the PRC for what the
plaintiff terms "Breach."  The allegations in connection with

47

these counts do not provide fair notice to defendants Fiske,

Jones and the PRC of what duty or obligation they are alleged to

have breached.  There is no tort cause of action known merely as

breach.  Accordingly, Counts 27, 28 and 30 fail to state claims

upon which relief can be granted.


H. Counts 33, 34 and 35.


Counts 33, 34 and 35 of the amended complaint are due

process claims against defendants Jones and PRC based on the

alleged denial of the plaintiff's witnesses and evidence in

connection with disciplinary proceedings.


The Fourteenth Amendment provides that a state shall not

"deprive any person of life, liberty, or property, without due

process of law."  A due process claim requires a two part

analysis.  First, the court must determine whether the interest

asserted by the plaintiff is within the scope of protection of

life, liberty, or property found in the Due Process Clause.

*Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the

interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when state prison regulations can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. at 483-84.

In *Sandin*, the inmate was sentenced to thirty days of disciplinary confinement in the Special Holding Unit. As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)." *Id*.

at 494 (Breyer, J. dissenting). The Court concluded that the
inmate's thirty days in the Special Holding Unit did not impose
the type of atypical significant deprivation in which the state
may conceivably create a liberty interest. *Id.* at 486. The Court
noted that disciplinary confinement at the prison in question,
with only insignificant exceptions, mirrored conditions imposed
on inmates in administrative and protective custody; that based
on a comparison of inmates inside of and outside of disciplinary
segregation, placement in segregation for thirty days did not
work a major disruption in his environment; that disciplinary
action did not inevitably affect the duration of the inmate's
sentence; and that the "regime to which he was subjected was
within the range of confinement to be normally expected for one
serving an indeterminate term of 30 years to life." *Id*. at 486-
87.

"After *Sandin,* it is clear that the touchstone of the
inquiry into the existence of a protected, state-created liberty
interest in avoiding restrictive conditions of confinement is not
the language of regulations regarding those conditions but the
nature of those conditions themselves 'in relation to the

50

ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545

U.S. 209, 223 (2005)(quoting *Sandin, supra,* 515 U.S. at 484). In

deciding whether a protected liberty interest exists under

*Sandin*, we consider the duration of the confinement and the

conditions of that confinement in relation to other prison

conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003).

Whether or not a protected liberty interest exists under *Sandin*

requires inquiry into the specific facts of the case. *Id.* at 533.


     The plaintiff alleges that defendant Jones sanctioned him

with thirty days in the RHU. He also alleges that the conditions

in the RHU amounted to an "atypical and significant hardship" on

him because he was placed in the RHU when he had pending § 1983

and habeas corpus cases and he was allowed to go the RHU mini law

library only a few times. He alleges that the conditions in the

RHU are worse than the conditions in the regular population

because unlike in the regular population the library in the RHU

is the temperature of a meat cooler, pens in the RHU library are

difficult to use since they are frozen, the books in the RHU

library are incomplete and ancient, in order to use the computer

in the RHU library an inmate must stand and must put his hands

through a hole in plexiglass in order to maneuver the computer mouse and inmates in the RHU must wait for weeks for copies and for ribbons and correction tape for the typewriters.

The plaintiff has not alleged facts from which it can reasonably be inferred that he was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life such that he had a liberty interest protected by the Due Process Clause.  Accordingly, Counts 33, 34 & 35 of the amended complaint fail to state claims upon which relief may be granted.

I. Counts 38, 40, 41 and 42.

Counts 38, 40, 41 and 42 are fraud claims against defendants Jones and Nish.  As set forth above, in order to establish fraud under Pennsylvania law, a plaintiff must establish 1) a misrepresentation of material fact; 2) scienter, 3) intention by the defendant to induce action; 4) justifiable reliance on the misrepresentation, and 5) and damage as a proximate result. *Colaizzi v. Beck,* 895 A.2d 36, 39 (Pa.Super.Ct.

2006).  Pursuant to Fed.R.Civ.P. 9(b), fraud must be pleaded with particularity.  Counts 38, 40, 41 and 42 of the amended complaint do not state claims upon which relief may be granted.

J. Count 48.

Count 48 is an Eighth Amendment claim against defendant Nish.  The plaintiff alleges that defendant Nish was deliberately indifferent to his serious medical needs when prison guards deliberately and intentionally denied him access to medical care. It is clear that the plaintiff is seeking to hold defendant Nish liable under a theory of *respondeat superior*.

"Liability may not be imposed under § 1983 on the principle of *respondeat superior.*" *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995).  "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Liability under 42 U.S.C. § 1983 may only be based upon a defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*,

546 F.2d 1077, 1082 (3d Cir. 1976). The complaint must contain averments of the involvement of the defendants in the conduct which caused a violation of the plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The plaintiff has not alleged facts from which a reasonable inference can be drawn that defendant Nish was personally deliberately indifferent to the plaintiff's serious medical needs. Accordingly, Count 48 of the amended complaint fails to state a claim upon which relief may be granted.

K. Counts 49, 51, 52 and 53.

Counts 49, 51, 52 and 53 are claims labeled "Obstruction" against defendants Fiske, Jones and Ellett. In connection with these counts, the plaintiff cites 18 Pa.C.S.A. § 5101, a provision of Pennsylvania's Crimes Code. Again, that criminal statute can not be enforced in a civil action. Accordingly, Counts 49, 51, 52 and 53 of the amended complaint fail to state claims upon which relief may be granted.

L. Counts 54, 55, 57 and 58.

Counts 54, 55, 57 and 58 are state law conspiracy claims against defendants Fiske, Jones, the PRC and Nish. As set forth above, in order to establish a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must establish: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *Kline v. Security Guards, Inc.,* 386 F.3d 246, 262 (3d Cir. 2004). The plaintiff's allegations of conspiracy are conclusory. Accordingly, Counts 54, 55, 57 and 58 fail to state claims upon which relief may be granted.

M. Count 60.

Count 60 is an Eighth Amendment claim against defendant Fiske.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Unnecessary and wanton inflictions of pain include those that are totally without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). Punishment is cruel and unusual only if it is "unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason to believe it serves any penal purpose more effectively than some less severe punishment." *Rhodes v. Robinson*, 612 F.2d 766, 774 (3d Cir. 1979) (quoting *Furman v. Georgia*, 408 U.S. 238, 282 (1972) (Brennan, J., concurring)).

Eighth Amendment claims involve a two prong analysis and must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992).

As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  To determine whether conditions of confinement are in violation of the Eighth Amendment, a court must look at the totality of the circumstances. *Young, supra,* 960 F.2d at 359 n.20.  "*Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). "To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes." *Id.* at 305. "Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The plaintiff claims that defendant Fiske violated the Eighth Amendment by stalking and harassing him. Although it is clear that the plaintiff found the conduct of defendant Fiske to be upsetting, the conduct that defendant Fiske is alleged to have engaged in such as staring and smiling at the plaintiff, saying "Merry Fucking Christmas Mr. Phippen" over the loud speaker, stopping the plaintiff in the corridors and going to his cellblock to solicit and harass him and directing derogatory remarks to the plaintiff is not so severe as to constitute a violation of the Eighth Amendment. Accordingly, Count 60 of the amended complaint fails to state a claim upon which relief may be granted.

N.  Leave to Amend.

The plaintiff has already filed an amended complaint.
The amended complaint is extremely long.  It appears that the
plaintiff has alleged all of the facts relevant to his claims.
There is not a reasonable basis to conclude that if the plaintiff
were granted leave to amend yet again he would be able to cure
the deficiencies in the amended complaint.  Accordingly, we
conclude that leave to further amend would be futile.

O. Summary.

In summary, with regard to defendants other than
defendant Loomis, we recommend that Counts 1 through 3, 12, 13,
16 through 20, 22 through 28, 30 through 38, 40 through 45, 48
through 55, 57 through 60, 62 and 63 of the amended complaint be
dismissed.[9]

---

[9]. We note that we have not recommended that the equal protection
and retaliation claims against defendants Fiske, Jones, McHugh,
the PRC and Nish be dismissed.

V.   Recommendations.


        Based on the foregoing, it is recommended that the motion

to dismiss (doc. 58) filed by defendant Loomis be granted and

that the claims in the amended complaint (Counts 14, 15, 21, 29,

39, 46, 47, 56 & 61) against defendant Loomis be dismissed.  It

is further recommended that the plaintiff's motion (doc. 72) for

a preliminary injunction be denied.  It is further recommended

that Counts 1 through 3, 12, 13, 16 through 20, 22 through 28, 30

through 38, 40 through 45, 48 through 55, 57 through 60, 62 and

63 of the amended complaint be dismissed.  Finally, it is

recommended that the case be remanded to the undersigned for

further proceedings.


                                        **/s/ J. Andrew Smyser**
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  August 26, 2010.